**In re Ralph PAIGE, Jr., d/b/a Anke's Sport Shop, Bankrupt.**

**Alvan F. UHLE, Trustee, Plaintiff,**

v.

**PARTS AND TRUCKS and Associates Commercial Corp., Defendants.**

**Bankruptcy No. NK 78–01193 B 9.**

United States Bankruptcy Court, W. D. Michigan.

Feb. 28, 1980.

Stanley, Davidoff, Long, Gray & O'Connor, David Davidoff, Kalamazoo, Mich., for plaintiff.

DeGroot, Kalliel, Triant & Conklin, P. C., Murray B. DeGroot, and James Triant, Grand Rapids, Mich., for defendant Associates Commercial Corp.

## OPINION

DAVID E. NIMS, Jr., Bankruptcy Judge.

### UNIFORM COMMERCIAL CODE—PERFECTION OF SECURITY INTEREST MOTOR VEHICLES

Alvan F. Uhle, the duly appointed, qualified and acting trustee, filed a complaint for a determination that the lien of Associates Commercial Corporation, hereafter Associates, is invalid as to the trustee and that the trustee holds a 1978 Freightliner Model FLT8664T tractor bearing Serial Number CA 213HL141576 free and clear of any interest by way of lien or otherwise in Associates or Parts and Trucks.

The facts are not in dispute.

Bankrupt, Ralph Paige, Jr., hereafter Paige, has been a resident of Michigan since 1961. Since 1964, he has had a Michigan chauffeurs license and has been licensed in no other state. He had a 1978 Michigan driver's license at the time of his purchase of the tractor in question. He has lived in Jonesville, Michigan, for three years, having previously lived for three or four years in Dexter, Michigan, and before that in Jonesville.

On July 14, 1978, Paige executed a security agreement whereby he granted a security interest in the tractor to Parts and Trucks whose principal place of business was in Gas City, Indiana. In this security agreement, Paige indicated that he resided at 194 S. Homer Rd., Jonesville, Michigan, Fayette Township, Hillsdale County. This was a purchase money security agreement with Parts and Trucks as the vendor. This security agreement was assigned to Associates.

At the time of the sale, it was understood that Paige would lease the tractor to Over-

land Express, hereafter Overland, and would work for Overland as a driver-broker. An application for title was filed with the Secretary of State of the State of Illinois and a Certificate of Title was issued. In the application, Paige's "legal address" was given as "4433 S. Halstad, Chicago, Ill. 60609." Paige was somewhat vague on the execution of the application for title. He testified that he was not sure that it was his signature, that he signed many papers at the time he bought the tractor and he may have signed this application. He was aware that Overland intended to apply for an Illinois title but he did not know why. No application for a Michigan title was filed.

Bankrupt did not know what was at 4433 S. Halstad in Chicago. He never lived there and he has never been there. Overland was located at New Brighton, Minnesota, a suburb of Minnesota, which the bankrupt visited.

Because none of the witnesses for either party knew what was located at 4433 S. Halstad in Chicago, a Chicago telephone directory was obtained and a listing for Overland gave its address at New Brighton, Minnesota. A call to the number given did reach an individual who stated on inquiry that he was speaking from the Chicago address and indicated that there was an office at this location.

Bankrupt testified that in his operations, he would leave his home in Jonesville about noon on a Monday and would be on the road for the week. He would call different dispatching offices for orders. He would never leave his tractor at any terminal more than eight hours at a time. He would usually return home Saturday night and would drop any trailer he was hauling at a restaurant in Jonesville and drive the tractor home, leaving it there for the weekend. On occasion, he would park the tractor at the restaurant. Jonesville, Michigan, was the only place where Paige kept his tractor when not working. His tractor's contacts with Illinois consisted of driving through that state on most of his jobs for Overland.

Defendant contends that since the tractor was covered by a certificate of title issued by Illinois, perfection must be governed by the law of that State. Michigan Uniform Commercial Code, Mich.Comp.Laws Sec. 440.9103(4) [Mich.Stat.Ann. Sec. 19.9103(4) (Callaghan 1975)] *

Defendant agrees that this controversy is controlled by *In re Brown* 5 U.C.C.Rep. 401 (W.D.Mich., 1968) and *In re Angier Bankruptcy* No. NK 75–1170 B 8 (W.D.Mich., 1977.) However, for the reason stated, defendant contends that *In re Brown, Supra,* and *In re Angier, Supra,* are not good law and should not be followed in this case.

Nothing would be served by repeating what has been said in those cases. The general law is well stated in 4 Anderson, Uniform Commercial Code (1971):

"Where the debtor obtained a title certificate in an improper state by giving a false address within that state, for the purpose of avoiding the higher taxes which would be imposed by the state in which the title certificate should have been obtained, the notation of the creditor's security interest on the title certificate does not perfect the creditor's interest."

However, I would point out that it is not clear that even a literal reading of Section 9103(4) would lead to the conclusion claimed. The Section states:

"Notwithstanding Subsections (2) and (3), if personal property is covered by a certificate of title issued *under a statute* of this State or any other jurisdiction which *requires* indication on a certificate of title of any security interest in *the* property as a condition of perfection, *then* the perfection *is governed* by the law of the jurisdiction which issued the certificate." (Emphasis added)

■ Thus, our question must be—(1) Was the tractor covered by a certificate of title issued under *a statute* of a jurisdiction (Illinois) which *required* indication on a certifi-

* The amendment to this section, Pub. Acts 1978 No. 369, did not become effective until July 25, 1978, eleven days after this transaction, and would not affect this case.

cate of any security interest in *the* property as a condition of perfection?

(2) If perfection is to be "governed by the law of the jurisdiction which issued the certificate," has there been perfection under the law of Illinois?

The Illinois version of the U.C.C., Ill.Rev. Stat. Ch. 26 Sec. 9–302 (Laws 1961, p. 2101, Sec. 9–302 as amended) provides in part:

"(3) The *filing of a financing statement* otherwise required by this Article is not necessary or effective to perfect a security interest in property subject to

" * * * *

"(b) The following statute of this State: 'The Illinois Vehicle Code;' but during any period in which collateral is inventory held for sale by a person who is in the business of selling goods of that kind, the filing provisions of this Article (Part 4) apply to a security interest in that collateral created by him as debtor; * * *"

Therefore, to perfect the security interest, it was necessary to file a financing statement *unless* the tractor was subject to the "Illinois Vehicle Code." There was no evidence that a financing statement was filed.

The "Illinois Vehicle Code," Ill.Rev.Stat. Ch. 95½ Sec. 3–202 (P.A. 76–1586, Sec. 3–202) states:

"Unless excepted by Section 3–201, a security in a vehicle *of a type for which a certificate of title is required* is not valid against subsequent transferees or lienholders of the vehicle unless perfected as provided in this Act." (Emphasis added)

So, now we must answer a further question:

Was this tractor of the type for which a certificate of title is required?

Ill.Rev.Stat. Ch. 95½ Sec. 3–101 (P.A. 76–1586, Sec. 3–101) sets forth the type of vehicles for which a certificate of title is required and subsection (a) states:

"*Except as provided in Section 3–102, every owner of a vehicle which is in this*

*State* and for which no certificate of title has been issued by the Secretary of State shall make application to the Secretary of State for a certificate of title of the vehicle." (Emphasis added)

There was no testimony to indicate that this vehicle was in the State of Illinois at the time of the transaction in question. It was purchased in Indiana and was immediately moved to Michigan. It is true that subsequently, in the course of his operations, Paige did drive the tractor through Illinois. However, I would not believe that this would be a sufficient basis by which we could say that an Illinois certificate was *required* under Illinois law. To *require* every person driving through each state to obtain a certificate of title for that state would be a severe restraint on the freedom of travel and interstate commerce. But Sec. 3–101 refers to Sec. 3–102 which states **:

"No certificate of title need be obtained for:

" * * *

"3. A vehicle owned by a non-resident of this state and not required by law to be registered in this state * * *"

It is clearly the understanding of the Secretary of State of Illinois that non residents are not required to obtain certificates of title. The application form which is incorporated into the title calls for the "legal address" of the applicant and provides spaces for City, Zip Code, and County. However, the State is printed as part of the form stating, "ILL." Thus, a non-resident would have to either alter the form or give a false Illinois address as was provided by Paige or whoever completed the form for the tractor with which we are concerned.

To hold that under M.S.A. Sec. 9103(4) any foreign certificate of title will perfect in Michigan, we must ignore the reference to "the property" and read it as though it stated "the general type of property." Also, if the annotation to the Ill.Rev.Stats. is right when it states that now only one state does not provide for perfection by

** Ill.Rev.Stat. Ch. 95½ Sec. 3 102 (P.A. 76- 1586 Sec. 3 · 102)

notation on the title, such a strained reading of the statute would have the anomalous result that out of the 49 States so providing, the lien on the tractor would be perfected in everyone of the States except the one issuing the certificate of title.

There have been some problems with perfection by title device. As stated in U.C.C. Rep. Current Materials, Art. 9 p. 38:

" * * * various fraudulent devices based on allegations of loss of the certificate of title enable a dishonest person to obtain both an original and a duplicate of title; to have a security interest shown on only one thereof; and then to effect a transfer into a new state on the basis of the clean certificate, no matter how diligent the officers in the second state may be."

This problem would be multiplied if a title could be applied for in 49 jurisdictions, trading back and forth until a cleared title was obtained. If the perfection on the title is limited to the residences of the debtor during the lifetime of the property, an inquiry at those States' issuing office will serve as some protection against such fraud unless the debtor is a complete vagabond.

The foregoing discussion reveals additional reasons for holding that the security interest of Associates in Paige's truck was not perfected.

First, the choice-of-law rule stated by Mich.Comp.Laws Sec. 440.9103(4) [Mich. Stat.ann. § 19.9301(4) (Callaghan 1975)] is not applicable. There was no certificate of title issued under a Michigan Statute. Further, Illinois did not *require* "indication on a certificate of title of any security interest *in the property* as a condition of perfection." Ill.Rev.Stat. Ch. 95½ Secs. 3–202, 3–101, and 3–102 (P.A. 76–1586 Secs. 3–202, 3–101, and 3–102) Since neither of the two conditions for applying Subsection (4) of Section 440.9103 were met, the choice of law rule stated by Subsection (2) of Section 440.9103 should be applied:

"(2) *If the chief place of business of a debtor is in this state, this article governs* the validity and perfection of a security interest and the possibility and effect of

proper filing with regard to general intangibles *or with regard to goods of a type which are normally used in more than one jurisdiction* (such as automotive equipment, rolling stock, airplanes, road building equipment, commercial harvesting equipment, construction machinery and the like) *if such goods are classified as equipment or classified as inventory by reason of their being leased by the debtor to others.* Otherwise, the law (including the conflict of laws rules) of the jurisdiction where such chief place of business is located shall govern. If the chief place of business is located in a jurisdiction which does not provide for perfection of the security interest by filing or recording in that jurisdiction, then the security interest may be perfected by filing in this state." (Emphasis added)

The chief place of business of the debtor being in Jonesville, Michigan, Michigan law governs perfection of Associates security interest. The security interest was not perfected under Michigan law since no application for a Michigan title was filed.

Second, Associates security interest was not perfected under *Illinois* law either, because Paige was a non-resident, not subject to the Illinois Vehicle Code, and, therefore, the security interest was subject to U.C.C. filing requirements.

Thus, not only for the reasons set forth in *In re Brown, Supra,* and *In re Angier, Supra,* but also because the statutes are clear in prohibiting perfection by a promiscuous issuance of titles through fraud, false statements and even perjury, I find that there was no perfection of the security interest of Associates and, therefore, that security interest is invalid as to the trustee. Mich. Comp.Laws Sec. 440.9103 [Mich.Stat.Ann. Sec. 19.9103 (Callaghan 1975)] The trustee holds the vehicle free and clear of any interest in Associates either by way of lien or otherwise.