In re Melvin DIXON, d/b/a Melvin Dixon Trucking, Debtor.

Steven N. MOTTAZ, Trustee, Plaintiff,

v.

Melvin DIXON and Freightliner Credit Corporation, Defendants.

Bankruptcy No. BK 82–50261.
Adv. No. 82–0391.

United States Bankruptcy Court,
S.D. Illinois.

April 20, 1983.

William R. Haine, Wood River, Ill., for Melvin Dixon, debtor/defendant.

Steven N. Mottaz, Alton, Ill., trustee/plaintiff.

David A. Bloch, Edwardsville, Ill., for Freightliner Credit Corp., defendant.

## ORDER

JAMES D. TRABUE, Bankruptcy Judge.

This matter having come before the Court pursuant to a complaint filed by Steven N. Mottaz, Trustee of the estate of the above named debtor, having been determined to involve no issues of fact, the Court has required the parties to submit briefs in support of their positions, and such briefs having been submitted, the Court, having read the briefs and having further researched the law and otherwise being fully informed in the matter, finds as follows:

1. On August 3, 1982, Melvin Dixon filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

2. Steven N. Mottaz was duly appointed the Trustee of the estate.

3. As of April 10, 1980, Melvin Dixon was the owner of a 1980 Freightliner tractor trailer, Serial No. CB113HP–190221, such vehicle was purchased in the State of Missouri.

4. The tractor trailer was an exempt asset of the estate.

5. Freightliner Credit Corporation was the owner of a valid security agreement,

dated April 10, 1980, covering the above-described vehicle.

6. The only certificate of title on the above-described vehicle was issued by the State of Montana on May 30, 1980, in the name of Melvin Dixon, which indicated the Freightliner Credit Corporation as a secured creditor.

7. At all times relevant to this transaction, Melvin Dixon was a resident of the State of Illinois. Freightliner Credit Corporation is also located in Illinois.

8. The debtor, Melvin Dixon, caused the vehicle to be titled in the State of Montana to facilitate its movement in interstate commerce, the business in which Melvin Dixon was engaged.

9. The lien held by Freightliner Credit Corporation was properly perfected under the Illinois Uniform Commercial Code; the Illinois Vehicle Code was not applicable.

Two issues are before this Court:

I. Whether the Montana Certificate of Title which indicated the defendant's security interest constituted perfection of that security interest under Illinois law.

II. Whether the Illinois Vehicle Code suspends application of the Uniform Commercial Code choice-of-law statutes because the tractor trailer may have been subject to the Illinois Certificate of Title requirements.

■ Determining whether the Montana Certificate of Title which indicated the defendant's security interest constituted perfection of that security interest under Illinois law requires answering a choice-of-law question. The applicable statute is found in the Uniform Commercial Code (U.C.C.) of the Illinois Revised Statutes, Chapter 26, Section 9–103. It must be emphasized at the outset that section 9–103 is not a "method of perfection" statute, but, rather, a "choice-of-law" statute used in determining the applicable law of multi-state transactions.

The structure of the section involves a *general rule,* governing what law shall apply, and a *series of exceptions* to the general rule for various types of collateral requiring special treatment. The general rule is found in Section 9–103(1)(b):

> Except as otherwise provided in this subsection, perfection and the effect of perfection or nonperfection of a security interest in collateral are governed by the law of the jurisdiction where the collateral is when the last event occurs on which is based the assertion that the security interest is perfected or unperfected.

*Ill.Rev.Stat.,* ch. 26, § 9–103(1)(b). Clearly, the basic rule designates the locus of the collateral as the indicator of what law is to govern. Subsection 9–103(1), however, deals only with collateral items not subject to any of the exceptions. *Ill.Rev.Stat.,* ch. 26, § 9–103(1)(a). The first issue reduces itself, therefore, to a choice between two of the exceptions in Section 9–103: subsection 9–103(2), collateral subject to "certificate of title," and subsection 9–103(3), collateral consisting of "accounts, general intangibles, and mobile goods." Subsection 9–103(2) reads as follows:

> (a) This subsection applies to goods covered by a certificate of title issued under a statute of this State or of another jurisdiction under the law of which indication of a security interest on the certificate is required as a condition of perfection.
>
> (b) Except as otherwise provided in this subsection, perfection and the effect of perfection or nonperfection of the security interest are governed by the *law* (including the conflict of laws rules) *of the jurisdiction issuing the certificate* until 4 months after the goods are removed from that jurisdiction and thereafter until the goods are registered in another jurisdiction, but in any event not beyond surrender of the certificate. After the expiration of that period, the goods are not covered by the certificate of title within the meaning of this Section.

*Ill.Rev.Stat.,* ch. 26, § 9–103(1). (Emphasis added.)

This subsection is the broader exception and the exception in subsection 9–103(3) applies only if subsection 9–103(2) does not. Subsection 9–103(3) reads:

(a) This subsection applies to accounts (other than an account described in subsection (5) on minerals) and general intangibles and to goods which are mobile and which are of a type normally used in more than one jurisdiction, such as *motor vehicles, trailers,* rolling stock, airplanes, shipping containers, road building and construction machinery and commercial harvesting machinery and the like, if the goods are equipment or are inventory leased or held for lease by the debtor to others, *and are not covered by a certificate of title described in subsection (2).* (b) The *law* (including the conflict of laws rules) *of the jurisdiction in which the debtor is located* governs the perfection and the effect of perfection or nonperfection of the security interest. *Ill. Rev.Stat.,* ch. 26, § 9–103(3). (Emphasis added.)

The defendant's perfected status as a secured party depends decisively on which exception applies. Subsection 9–103(2) requires the "law of the jurisdiction issuing the certificate" to govern, while subsection 9–103(3) requires the law of the jurisdiction in which the debtor is located to govern. The tractor-trailer could reasonably fall into one exception or the other because it requires a certificate of title and it also qualifies as "mobile goods." The last line of subsection 9–103(3)(a), however, makes the distinction mentioned above that 9–103(3) is a narrower exception and not applicable unless the collateral is "not covered by a certificate of title described in subsection (2)." *Ill.Rev.Stat.,* ch. 26, § 9–103(1)(a). The Illinois Committee Comments reiterate the meaning of this qualifier:

Note that mobile goods are covered by this subsection only if (1) they are equipment or inventory leased or held for lease by the debtor, *and* (2) they are not covered by a certificate of title.

Ill.S.H.A. Ch. 26, § 9–103(3), (2) Committee Comments.

Therefore, the applicable exception to the general rule is subsection 9–103(2), Certificates of Title. Although both exceptions are somewhat ambiguous when applied to the collateral in the case at bar, the qualifier and the Committee Comment assure application of "the law of the jurisdiction issuing the certificate," which in this case is the Montana Vehicle Code:

(4) The filing of a security agreement or other lien instrument or copy thereof as herein provided, perfects a security interest which has attached under the document filed. Filing of a security agreement or other lien instrument constitutes constructive notice to subsequent purchasers or encumbrancers, from the time of filing, of the existence of the security interest created by the document filed.

Mont.Code Ann. Title 61, Ch. 3, § 103(4).

## II.

■ Determining whether the Illinois Vehicle Code (I.V.C.) suspends application of the U.C.C. choice-of-law statutes because the tractor-trailer may have been subject to Illinois certificate of title requirements is a more difficult question. If the tractor-trailer in question is subject to the Illinois certificate of title requirements, then perfection requirements of the I.V.C. are applicable. The applicable statutes are Illinois Revised Statutes 3–202 and 3–207 of Chapter 95½, Motor Vehicle Code. P.A. 76–1586, § 3–207, eff. July 1, 1970. *Ill.Rev.Stat.,* ch. 95½, § 3–207.

The fact, however, that the tractor-trailer is not subject to the Illinois certificate of title requirements (and therefore not subject to the I.V.C. perfection requirements) may be proven by a three-part argument.

First, the tractor-trailer qualifies under an exclusion to certificate of title requirement section 3–101, which reads:

(a) Except as provided in Section 3–102, every owner of a vehicle which is in this State and for which no certificate of title has been issued by the Secretary of State shall make application to the Secretary of State for a certificate of title of the vehicle.

*Ill.Rev.Stat.,* ch. 95½, § 3–101.

The applicable exception reads: "No certificate of title need be obtained for:

(4) A vehicle regularly engaged in the interstate transportation of persons or property for which a currently effective certificate of title has been issued in another State."

*Ill.Rev.Stat.,* ch. 95½, § 3–102.

While the plaintiff argues that the tractor-trailer did not have a "currently effective" certificate of title, because of the time lapse between the date of purchase and date of title, the word "currently" may be plainly construed to show defendant's qualification for the exclusion stated in section 3–102. The defendant-owner, was in the process of titling the vehicle and apparently had not yet engaged the vehicle in any regulated use requiring title which shows, thus, a "good faith" effort in titling the tractor-trailer. This "good faith" reasoning is bolstered by the fact that all of the other exclusions are justified because either (a) it is not necessary to have a title because the vehicles are not used on the highways or (b) alternative controls exist for operation of the vehicles (e.g., farm vehicles, state owned vehicles, interstate commerce vehicles). These two criteria are readily observable from an evaluation of the exclusions and clearly demonstrate the purpose of the section. Such purpose was observed by the defendant.

Also, with respect to the Trustee's status as a hypothetical lien creditor, title was certainly effective as of the date of the petition in bankruptcy, December 1982, the title being certified in May 1980. Title 11 of the United States Code, Section 544 clearly indicates *when* the rights of a Trustee, as a lien creditor, accrue:

(a) The trustee shall have, *as of the commencement of the case,* and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor *at the time of the commencement of the case,* and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists.

11 U.S.C. § 544. (Emphasis added.)

Therefore, for the purposes of this case, the rights of the plaintiff-trustee as lien creditor clearly did not accrue until well after the certificate of title was effective.

Second, the *Interstate Commerce Commission* (I.C.C.) has general jurisdiction over the interstate transportation of people or property. 49 U.S.C. § 10521(a)(1)(A). Moreover, the I.C.C. has provided for the validity of perfection in all jurisdictions by notation ("indication") on a certificate of title of the security interest. This recently enacted statute reads:

(b) A security interest in a motor vehicle owned by, or in the possession and use of, a carrier having a certificate or permit issued under section 10922 or 10923 of this title and owing payment or performance of an obligation secured by that security interest is perfected in all jurisdictions against all general, and subsequent lien, creditors of, and all persons taking a motor vehicle by sale (or taking or retaining a security interest in a motor vehicle) from, that carrier when—

(1) a certificate of title is issued for a motor vehicle under a law of a jurisdiction that requires or permits indication, on a certificate or title, of a security interest in the motor vehicle if the security interest is indicated on the certificate.

49 U.S.C. § 11304(b).

This section provides both for the effect and method of perfection for vehicles registered in interstate commerce. This statute is consistent with section 9–103 of the U.C.C. choice-of-law rules for collateral subject to certificate of title.

Third, but most important, the case law in this area of the law clearly favors the defendants. The recent decision to reverse the Bankruptcy Court in Michigan in the case of *In re Paige* is the key to clarifying this understandably confusing area of the law. 3 B.R. 115 (Bkrtcy.1980). 679 F.2d

**308**

601 (6th Cir.1982). For purposes in the case at bar, the import goes to the reversal of *In re Paige* as the controlling case of *In re Joseph Thomas Brown* which was recently decided in this Court. 18 B.R. 956 (Bkrtcy. 1982). *In re Paige* was, however, reversed subsequent to the decision of *In re Joseph Thomas Brown*. Both cases held, as is asserted by plaintiff, that certificate of title requirements were determined by the *residence* of the owner.

The facts of *In re Paige* are only slightly different in that Illinois was in the position of Montana, in the case at bar, as the titling jurisdiction. The appellate court reasoned:

Illinois does require "indication on a certificate of title as a condition of perfection" and, therefore, would seem to satisfy the requirement. Bankruptcy Judge Nims focused on the word "requires" and interpreted it broadly. He concluded that section 9–103(4) [1962 version] was applicable only if Illinois required notation on the certificate as a condition of perfection *and* required an Illinois certificate of title for the tractor. Only the former requirement is expressly stated in section 9–103(4). The latter, if a requirement at all, is implied. Illinois law does not *require* a certificate of title to be issued under these circumstances, i.e., to a non-resident motorist. Therefore, Judge Nims reasoned, section 9–103(4) does not come into play.

We reject this interpretation because it seems contrary to the purpose of the subsection. The subsection promotes uniform recognition of security interests which have been noted on the certificate of title. It does not appear to be the purpose of the subsection to defeat security interests which are properly noted on a valid certificate merely because the certificating jurisdiction did not require the debtor to obtain a certificate of title from that jurisdiction.

679 F.2d at 602.

The Court further reasoned:

The introduction of a standard which requires the certificating state to be the state of the debtor's chief place of business may cast uncertainty on the perfection of security interests in vehicles used in more than one jurisdiction. The advantage of a literal interpretation of section 9–103(4) is that a potential creditor need look only to one place—the certificate of title—to discover prior security interests. If the debtor cannot or will not produce the title certificate the potential creditor is immediately on notice that he acts at his own risk. However, the interpretation offered by Judge Nims would require a potential creditor not only to examine the debtor's certificate of title but also to determine whether it was issued by the state of the debtor's chief place of business. We do not believe that the drafters of the UCC intended to complicate commercial transactions by such a requirement.

Accordingly, the judgment of the District Court is reversed. 679 F.2d at 603.

Such reasoning emphasizes ease of interstate commerce and satisfaction of the purpose of the notice requirements of the U.C.C. Indeed, an argument of actual notice, and, therefore, substantial compliance may be synthesized from *In re Paige* (citing *In re Dawson*, 21 U.C.C.Rep. 293 (1976)):

Laws providing for the registration and titling of vehicles are now, and have been for some time, commonplace, and prospective lenders are generally aware of their existence. Any such lender, preparing to extend credit to the owner of a vehicle used in multi-state commerce (if the ownership, and the value, of the vehicle are important factors in the credit transaction), will most assuredly ask his prospective debtor for his registration and title papers to such a vehicle, and begin his credit investigation, in respect of liens, in the certificating state... This, it seems to me is what § 9–103(4) comprehends, a scheme in accordance with and not incompatible to the notice concepts of the UCC.

21 U.C.C.Rep. at 299.

In reading these cases, care must be taken not to try to reconcile specific sections of the U.C.C. of one state with that of anoth-

er.  Michigan, for example, uses the 1962 version of the U.C.C. while Illinois has enacted the 1972 revision.  Confusion of these two texts along with confusing the different criteria for governing law in multi-state transactions explains much of the difficulty and inconsistency in reading the case law. It is clear, then, that *not even residency* (the governing law criterion of U.C.C. section 9–103(3)) may be asserted to subject the defendant to the requirements of the I.V.C. in an effort to suspend the controlling sections of the U.C.C.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the lien of Freightliner Credit Corporation be, and the same is hereby, found to be valid against the Trustee, and that the vehicle subject to such lien is an exempt asset of the estate in bankruptcy.